**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEENAN L. RIEPEN,

                                      Case No. 04-60180
          Plaintiff,                    Hon. Marianne O. Battani
                                        Mag. Judge R. Steven Whalen

        vs.

JO ANNE B. BARNHART,
Commissioner of
Social Security,

              Defendant.
_____/

**OPINION AND ORDER OF THE COURT ADOPTING THE**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

       Plaintiff Kennan L. Riepen brought this action pursuant to 42 U.S.C. § 405(g) to

challenge the final decision of the Commissioner denying his application for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) under sections 216(i), 223, and

1614(a)(3)(A) of the Social Security Act.  On January 26, 1998, Plaintiff filed an application for

DIB and SSI, alleging disability from an incident that occurred August 1, 1994 (Tr. 48-50, 67).

Initially, Plaintiff alleged disability based on a personality disorder, back, knee and TMJ pain

and dysthymia (Tr. 245).  Plaintiff's insurance ceased after September 31, 1999 (Tr. 62).  On

October 1, 1999, the Social Security Administration denied Plaintiff's application (Tr. 33).

Plaintiff requested a postponement of his scheduled hearing, and did not appear at appointed

hearing time (Tr. 17).  Administrative Law Judge (ALJ) John A. Ransom dismissed Plaintiff's

request for a hearing, finding no good cause for Plaintiff's failure to appear (Tr. 17).  The

Appeals Council remanded the case, finding that ALJ Ransom had not provided a rationale for

refusing to postpone the hearing (Tr. 17). ALJ Ransom held a rehearing on June 16, 2003, in Flint, Michigan, in which he heard testimony from Plaintiff, his mother and the vocational expert (Tr. 422; 425-27; 447-52; 452-57). ALJ Ransom found that Plaintiff was not disabled because although unable to perform his past relevant work, he could perform other work which existed in significant numbers in the national economy (Tr. 26). On June 11, 2004, the Appeals Council denied review (Tr. 9-11). Plaintiff filed for judicial review of the final decision on September 3, 2004.

The case was referred to Magistrate Judge R. Steven Whalen pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross-motions for summary judgment. The Magistrate Judge issued a Report and Recommendation (R&R) on May 12, 2005, recommending that Defendant's motion be granted and Plaintiff's motion be denied. Overall, the Magistrate Judge found that the ALJ's decision to deny DIB and SSI to Plaintiff was supported by substantial evidence.

On June 9, 2005, Plaintiff filed Objections to the R&R, raising two challenges: 1) the Magistrate Judge erred in failing to find that the ALJ improperly substituted his own judgment, for that of a treating physician; and, 2) the Magistrate Judge erred in failing to find that the ALJ neglected to complete the six-step analysis, required by 20 CFR § 404.1527, when the opinion of a treating physician is not accorded controlling weight.

For the reasons stated below, the Court rejects Plaintiff's objections, and adopts the Magistrate Judge's R&R in its entirety.

## II. STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate judge. *Flournoy v. Marshall*, 842 F.2d 875, 878 (6th Cir. 1987).

Judicial review in a social security appeal is limited to determining whether there is substantial evidence supporting the administrative law judge's decision and whether the judge applied the correct legal standards in reaching that decision.  *Elam v. Comm's of Soc. Sec.*, 348 F.3d 124,125 (6th Cir. 2003); 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If substantial evidence supports a denial of benefits, that decision is not subject to reversal, even if the reviewing court determines that substantial evidence supports a contrary decision.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

When determining whether the decision is supported by substantial evidence, the reviewing court must take into consideration the entire record, including "whatever in the record fairly detracts from its weight." *Mullen*, 800 F.2d at 545 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1971)).  However, the court may not review the evidence *de novo*, make determinations of credibility, or weigh the evidence. *Brainerd v. Sec'y of Health and*

3

*Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Consequently, the substantial evidence standard accords "considerable latitude to administrative decision makers," as "[i]t presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Mullen*, 800 at 545 (citations and internal quotations omitted).

## III. ANALYSIS

### A. Substitution of Judgment

Plaintiff asserts that the ALJ improperly substituted his own judgment, for that of a treating physician, in finding that Plaintiff does not have Multiple Sclerosis (MS). In his report, the ALJ acknowledges that Dr. Awerbuch diagnosed Plaintiff with MS, and that MS is an impairment listed under 20 CFR Pt. 404, Subpt. P, Appendix 1. The ALJ nevertheless rejected the diagnosis as unsupported by medical or clinical evidence and inconsistent with other evidence of record (Tr. 20).

The administrative definition of multiple sclerosis is found in 20 CFR Pt. 404, Subpt. P, Appendix 1, 11.09. Section 11.09 has three subsections. Plaintiff qualifies as disabled if his impairment meets the definition of 11.09(A), (B), or (C). The ALJ concluded that Plaintiff's impairment did not qualify as MS under any subsection of 11.09.

11.09(A) requires "[d]isorganization of motor function as described in 11.04(B)." 11.04(B) defines disorganization of motor function as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station," and then refers to 11.00(C). 11.00(C) defines persistent disorganization of motor function as:

> paresis or paralysis, tremor or other involuntary movements, atazia and sensory disturbances (any or all of which may be due to cerebral cerbellar, brain stem, spinal

4

cord,   or peripheral nerve dysfunction) which occur singly or in various combination, frequently
provides the sole or partial basis for decision in cases of neurological impairment.  The
assessment of impairment depends on the degree of interference with locomotion and/or
interference with the use of fingers, hands, and arms.

In rejecting Dr. Awerbuch's diagnosis of MS, the ALJ cited Plaintiff's ability to walk,
use his upper extremities, and perform daily activities, all undermining a conclusion that Plaintiff
"has any significant disorganization of his upper or lower extremities" (Tr. 19).  The ALJ
concluded that these factors demonstrate Plaintiff's impairment does not qualify as MS under
11.09(A).

11.09(B) references "[v]isual or mental impairment. . . ."  The ALJ noted that Plaintiff
did not have any visual impairments that met 11.09(B).  Nor did Plaintiff's mental impairments
markedly limit his ability "to perform activities of daily living, to maintain social functions, or
the ability to concentrate on tasks." (Tr. 19).

As evidence of Plaintiff's ability to perform activities of daily living, the ALJ observed
that Plaintiff's administrative record indicated that he was able to do household chores, yard
work, drive a car, take care of personal needs, cook and launder clothing.  The ALJ concluded
that Plaintiff was mildly limited in his ability to perform daily activities (Tr. 23).  As evidence of
Plaintiff's ability to maintain social functions, the ALJ noted that Plaintiff lived with his mother
and got along well with friends.  Because there are statements in the record indicating Plaintiff
was suspicious and hostile toward others, the ALJ concluded that Plaintiff had moderate
limitations in social functioning (Tr. 23).  As evidence of Plaintiff's ability to concentrate on
tasks, the ALJ relied on evidence that Plaintiff used a computer, watched television, and drove.
However, the ALJ also noted that Plaintiff had difficulty completing a task.  The ALJ concluded

that Plaintiff had moderate limitations in his ability to concentrate on tasks (Tr. 23).  The

administrative record also indicated that Plaintiff was able to bowl, perform some lawn care and

limited snow shoveling.  Thus, the record contained substantial evidence to support the ALJ's

conclusion that Plaintiff's impairments did not meet the criteria under 11.09(B).

11.09(C) requires "[s]ignificant, reproducible fatigue of motor function with substantial

muscle weakness on repetitive activity, demonstrated on physical examination, resulting from

neurological dysfunction in areas of the central nervous system known to be pathologically

involved by the multiple sclerosis process." 20 CFR Pt. 404, Subpt. P, App. 1, 11.09(C).  The

ALJ stated that MS had not been medically documented.  The ALJ cited Dr. Awerbuch's initial

observations that the white matter shown on Plaintiff's MRI may or may not be consistent with

MS (Tr. 412).  The ALJ also noted that Plaintiff continued to be active and performed household

and yard chores." (Tr. 20).  These factors lead the ALJ to conclude that Plaintiff's impairment

dis not satisfy the criteria listed in 11.09(C) (Tr. 20).

In concluding that Plaintiff's impairments did not qualify as a disability listed under 20

CFR Pt. 404, Subpt. P, Appendix 1, the ALJ listed numerous factors from the record to support

his conclusion.  The factors qualify as substantial evidence, and a reasonable mind might accept

them as adequate to support the ALJ's conclusion. *Kirk*, 667 at 535.  The evidence cited from the

record put the ALJ's conclusion within the ALJ's presupposed "zone of choice." *Mullen*, 800

F.2d at 545.

## B.  The Treating Physician Rule

6

Plaintiff's second objection is that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1527(d)(2) in two ways: when he dismissed Dr. Awerbuch's diagnosis that Plaintiff sufferd from multiple sclerosis; and when he dismissed Dr. Gilmore's diagnosis that Plaintiff was "totally and permanently disabled" (Tr. 22).  The Court disagrees.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Moreover, although an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), provided he sufficiently explains his rationale and the record supports his findings.  Under the regulation, every medical opinion received is evaluated, regardless of the source.   In assessing its value, the ALJ considers, among other things, the examining relationship, according greater weight to the opinion of a source who has examined the claimant; the treatment relationship, according greater weight to "opinions from [ ] treating sources; the length of the treatment relationship and the frequency of examination; and supportability, the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight it is given.  20 C.F.R. § 1427(d).  The regulation further provides that medical source opinions on issues reserved to the Commissioner are not dispositive of the issues.

The ALJ properly followed the guidelines of 20 C.F.R. § 404.1527 when dismissing Dr. Awerbuch's diagnosis.  As discussed above, the ALJ articulated his reasons for concluding that Dr. Awerbuch's diagnosis did not establish a relationship between Plaintiff's fatigue, intermittent blurry vision and MS (Tr. 19-20, 23).  The ALJ also noted that Dr. Awerbuch had

only been treating Plaintiff since May, 2002, a much shorter time period than Dr. McNamara, whose diagnosis was given greater weight (Tr. 19-20). This discussion by the ALJ conforms to the requirements of 20 CFR § 404.1527(d)(2), and satisfies the holding of *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), which mandates that an agency follow its procedural rules, even when a change in procedure is not likely to create a difference in the outcome of the case on the merits.

The ALJ likewise followed the guidelines of 20 C.F.R. § 404.1527 when he dismissed Dr. Gilmore's diagnosis that Plaintiff was "totally and permanently disabled." Again, the ALJ noted that Dr. Gilmore has not been treating Plaintiff for as long as Dr. McNamara, and consequently, Dr. McNamara's diagnosis could be accorded greater weight. 20 C.F.R. § 404.1527(d)(2)(i) (Tr. 21-22). The ALJ also satisfied 20 CFR § 404.1527(d) by noting that the diagnosis was not supportable or consistent with the other evidence of record (Tr. 24). Specifically, the ALJ cited the opinions and diagnoses of Dr. McNamara and Dr. Thiel, along with other evidence of record when making this determination, including the forms filled out by Plaintiff regarding his activities of daily living. The evidence was not consistent with Dr. Gilmore's diagnosis. Moreover, Dr. Gilmore's diagnosis of Plaintiff as totally and permanently disabled was made relative to the definition under Ford Motor Company's health care plans (Tr. 313), not under the SSA. Finally, under 20 C.F.R. §404.1527(e) the finding that a claimant meets the statutory definition of disabled is an administrative finding that is ultimately up to the Social Security Commissioner. Therefore, Dr. Gilmore's statement that Plaintiff was disabled is not determinative.

In sum, the Magistrate Judge's recommendations reflect careful consideration of the ALJ's decision in its entirety.  Although the ALJ did not articulate his analysis of the medical evidence, step by step, under the governing regulation, his decision comports with the criteria established pursuant to 20 C.F.R. § 1527.

IV.  CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's R&R in its entirety and affirms the denial of DIB and SSI to Plaintiff.  Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

IT IS SO ORDERED.

s/Marianne O. Battani
HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: August 11, 2005

**CERTIFICATE OF SERVICE**

Copies of this order were mailed to Lewis M. Seward, James A. Brunson, and Magistrate Judge R. Steven Whalen.

s/Bernadette M. Thebolt
Deputy Clerk

9